Thomas B. McGuire, Appellant, v. Ralph A. Cohen, et al., Appellees.

Gen. No. 49,096.

First District, First Division.

December 9, 1963.

Rehearing denied January 21, 1964.

William C. Wines and Robert J. Nolan, of Chicago, for appellant.

Courshon & White, Jacob B. Courshon and Gerald White, of Chicago, for appellees.

MR. JUSTICE MURPHY delivered the opinion of the court.

Plaintiff, in an equity action, seeks to redeem collateral which was sold at an extrajudicial private sale, after the maturity and nonpayment of his collateral note. By a judgment order, the trial court rejected plaintiff's right of redemption claim and confirmed title in defendants to plaintiff's country club membership certificates and to plaintiff's interest, as lessee, in a 99-year lease on real estate. Plaintiff's direct appeal to the Supreme Court, contending freehold interests were involved, was found to be "wrongfully appealed" to that court and was ordered transferred to this court.

On November 9, 1960, plaintiff executed a $45,000 commercial form "collateral note—judgment clause," payable to defendant Joseph R. Friedman "on or before six (6) months after date," with interest at 6% per annum. The collateral is identified in the note as "1. Assignment of beneficial interest in Trust No. 41310, under which Chicago Title & Trust Co. is Trustee and holds title to the following described real estate: . . . [Plaintiff's home]. 2. Twenty-eight (28) certificates of membership, being all of the memberships in the Brookwood Country Club, all with stock power attached. 3. Assignment of Thomas McGuire

376

of all his interest in and to leasehold dated 6-21-48 and recorded 8-3-48 as Document No. 551054 demising for a period of 99 years lots 7, 8 and 9 in Addison Township Supervisor's Assessment plat No. 7, being a part of the South ½ of Section 16, Township 40 North, Range 11, according to plat recorded 1-10-45, as Document No. 472363, in DuPage County, Illinois."

The note provides for the sale of the collateral "at or after maturity of this note . . . at public or private sale . . . and at such sale the payee or any holder hereof may become the purchaser of said collateral free from any right of redemption; . . . ." The note also includes the right to confess judgment for the unpaid amount and reasonable attorney's fees.

After three extensions of the time of payment, a letter of default was sent to plaintiff on November 27, 1961, more than a year after the debt was originally incurred. Payment not being made, the collateral was sold to defendant Ralph A. Cohen on December 4, 1961, for $50,403.75, representing principal—$45,000, interest—$2,925, and attorney's fees and expenses—$2,-478.75. The note, in evidence, is marked "Paid and satisfied, Ralph A. Cohen." As to the collateral sold, plaintiff argues that the three items were sold. Defendants insist that only two items were sold, being the certificates of membership and the 99-year leasehold. Defendants have repeatedly stated that "plaintiff's home was not sold at the private sale," and that they have offered to return to plaintiff the assignment "representing the beneficial interest in the residence occupied by plaintiff."

The complaint filed March 14, 1962, alleges that the total value of the collateral is $550,000, and that on February 28, 1962, plaintiff tendered a cashier's check for $53,578.75 "to redeem all of the property . . . ," which tender was refused by Friedman as attorney for Cohen. The prayer of the complaint is

"that the Court direct the Defendants to accept the sum found to be due and owing to them and upon payment of the same out of the deposits hereby tendered to execute such documents as will restore Plaintiff to his ownership of said property and to cancel the evidence of indebtedness on which the Defendants claim to have become owners of the property."

The answer of defendants denies that the value of the collateral is $550,000 and alleges on information that the check for $53,578.75, allegedly tendered, "was advanced by one John Doe, as a down payment toward the purchase of the properties of the Plaintiff . . . ."

After an extended trial before the chancellor, which included the testimony of the parties and numerous exhibits, the court entered a "judgment order," finding that plaintiff had failed to sustain the material allegations of his complaint, and that he was not entitled to the relief demanded; that "defendants have tendered to plaintiff in open Court" an assignment of the beneficial interest of the legal title to plaintiff's residence; that the promissory note "has been canceled and that the debt evidenced thereby has been paid"; that "the defendant, Ralph A. Cohen, is the rightful and legal assignee of lessee's interest in the written lease dated June 21, 1948, . . ." and the legal owner and holder of the "certificates of membership in Brookwood Country Club . . . ." The chancellor then decreed that plaintiff's prayer for relief be denied for want of equity. This appeal followed.

Plaintiff's contention is that under statutory provisions and authorities cited, all of the interests "pledged" by the note were interests in lands, and two of them were freehold interests, his home and the certificates of membership, and, therefore, as a matter of law, "such interest cannot be sold in foreclosure of a lien securing an indebtedness except in pursuance of

a decree of a court of equity, with statutory rights of redemption. This is true even though the parties agree ever so clearly to the contrary in the note, creating and securing the indebtedness."

Defendants' principal contentions are (1) that plaintiff has no substantial interest in the collateral cognizable in a court of equity; (2) that plaintiff's acts are "tainted with inequitableness and bad faith" in the very matter on which he prays for aid; and (3) that the 99-year leasehold was personalty and, as such, "it was susceptible of sale in accordance with the powers granted to the holder of the collateral note."

Initially, as to any freehold interest being here involved, we believe the order of the Supreme Court transferring this appeal to this court inferentially disposed of plaintiff's freehold contentions. The record is sufficient to show that defendants are not asserting any claim of ownership as to the beneficial interest of plaintiff's home. Also, we do not believe that the Brookwood Country Club membership certificates are to be considered within the rules which apply to trusts of which the corpus is real estate and of which "beneficial interests" of the "cestuis" are considered to be freehold interests in lands. (DeVoigne v. Chicago Title & Trust Co., 304 Ill 177, 136 NE 498 (1922); Horney v. Hayes, 11 Ill2d 178, 142 NE2d 94 (1957).) Neither do we believe that these membership certificates give rise to any rights of redemption here to plaintiff.

Plaintiff's determinative contention is that the 99-year leasehold, although *not* a freehold, and usually denominated as a *"chattel real,"* is "nevertheless 'real estate' and not 'personal property' within the provisions of the Illinois Mortgage Act forbidding the foreclosure of mortgages upon real estate otherwise than by judicial proceedings and is within the Illinois stat-

379

ute concerning judgments, decrees and executions providing for redemption by the mortgagor from foreclosure sales upon 'real estate mortgages.' "

Plaintiff cites various Illinois statutes to prove that the lien of the instant note "could be foreclosed only by judicial sale, with statutory right of redemption." (1) Section 38 of "An Act concerning conveyances" (c 30, § 37): "The term 'real estate,' as used in this act, shall be construed as co-extensive in meaning with 'lands, tenements and hereditaments,' and as embracing all chattels real. This act shall not be construed so as to embrace last wills and testaments, except as herein expressly provided." (2) Section 3 of the Act on Judgments, Decrees and Executions (c 77), provides as follows: "The term 'real estate,' when used in this act shall include lands, tenements, hereditaments, and all legal and equitable rights and interests therein and thereto, including estates for the life of the debtor or of another person, and estates for years, and leasehold estates, when the unexpired term exceeds five years." (3) Section 1 of the Illinois Mortgage and Foreclosure Act (c 95, § 23), which provides that "no real estate" shall be "sold to satisfy any . . . mortgage, trust deed or other conveyance in the nature of a mortgage, except in pursuance of a judgment or decree of a court of competent jurisdiction." (4) Section 18 of Chapter 77 provides for the mortgagor's statutory right of redemption from sales of mortgages upon "real estate," redeeming the real estate so sold "within twelve months from said sale, . . . by paying to the purchaser thereof, . . . the sum of money for which the premises were sold or bid off, with interest thereon at the rate of six per centum per annum from the time of such sale, whereupon such sale and certificate shall be null and void." Neither side has cited any authorities which are directly in point on this contention.

In Knapp v. Jones, 143 Ill 375, 32 NE 382 (1892), our Supreme Court, in an action for the foreclosure of a trust deed, in which was described "a large amount of real estate in LaSalle county, together *'with the grain elevator and the leased ground upon which it was erected,'* " quoted and affirmed the Appellate Court opinion, where it is said (p 379):

> "We think that question settled, at least in this State, and that the property in question is a 'chattel real,' and under our statute is classed as real estate. . . . It is apparent, therefore, that by the express terms of the statute the elevator and leasehold interest of Blanchard were 'chattels real,' and the deed of trust was valid as a real estate mortgage, and the circuit court properly so held."

In Barrett v. Trainor, 50 Ill App 420 (1893), where a claim was made based upon a sale by the sheriff on an execution issued upon a judgment against the plaintiff in error, the court said:

> "The subject of the sale here was an unexpired term of thirty months. Chattels real are subject to sale on execution (§ 40, c 77, RS); and, when the unexpired term does not exceed five years, without redemption."

The question of categorizing a 99-year leasehold arose in Imperial Bldg. Co. v. Chicago Open Board of Trade, 238 Ill 100 (1909), where the court said (p 107), 87 NE 167:

> "It is true that a leasehold interest in land is for some purposes treated as personal property, but generally it is considered a chattel real."

Defendants contend, however, that a chattel real is a mixed concept, the two words themselves being opposed to one another, and therefore the attitudes

of the parties towards the collateral is important in considering an asset of dual nature susceptible of varied interpretations and definitions. Defendants concede that "in some instances" a chattel real is viewed as real estate but that under Zimmermann v. Dawson, 294 Ill 380, 128 NE 546 (1920), "such a leasehold as the one here involved has been held to be a chattel real and reckoned as part of the personal estate." However, in that case the Supreme Court was passing on the question of whether a freehold was involved for a direct appeal to the Supreme Court and the property involved was a 99-year lease which was part of a personal estate of a decedent.

Defendant also cites Pierce v. Pierce, 4 Ill2d 497 (1955), where it is said (p 499), 123 NE2d 511:

> "There is of course no question but that a leasehold interest is not a freehold at common law, but is treated in most respects as personal property."

Nevertheless, it was there held (p 503) that a 99-year leasehold "is subject to a partition. That conclusion is in harmony with the decisions reached by the courts of other States." The Appellate Court, in considering the same case (351 Ill App 336), said (p 340):

> "It is our opinion that both by statute and by decision, Illinois has not adhered to the strict, technical, feudal definition of the term 'real estate.' Chapter 30 of the Illinois Revised Statutes, dealing with conveyances, defines 'real estate' . . . 'as embracing all chattels real.' A 99-year lease, being a chattel real, would come within the provisions of the above statute."

And on page 343 said:

> ". . . Long-term leases have become a common method of land holding in our country, and under such leases, great industrial, commercial and resi-

382

dential enterprises have been built. For many purposes, only some of which have been herein described, they have the stature of real estate and are treated as within the definition of 'lands, tenements and hereditaments.' It would in our opinion be inequitable to deny a part owner of such an interest the right to partition."

Plaintiff, admitting that "the parties themselves agreed that the properties in this note should be 'considered' as 'collateral, subject to the laws of the pledge, and to be sold under the laws of the pledge,'" cites Warner v. Gosnell, 8 Ill2d 24 (1956) at p 30, 132 NE2d 526, where the court said:

"Section 12 of the Mortgage Act (Ill Rev Stats 1953, c 95, § 13,) provides that every deed conveying real estate, which shall appear to have been intended only as a security in the nature of a mortgage, though it be an absolute conveyance in terms, shall be considered as a mortgage. The burden of proof rests upon the one asserting a deed absolute in form to be a mortgage to show that fact by clear, satisfactory and convincing proof. Deadman v. Yantis, 230 Ill 243; Rankin v. Rankin, 216 Ill 132; Novak v. Kruse, 288 Ill 363.

"There can be no question that a deed takes effect from its delivery and that its character at the time of such delivery becomes fixed as of that time. The question whether a deed which is absolute in form is to be taken as a mortgage depends upon the intention of the parties in that regard at the time of its execution. The intention may be found from the papers themselves or by aid of extraneous evidence, which, when ascertained, will govern the decision.

"The law is well settled that the true character of the transaction may be shown by parol, and if,

upon consideration of the facts, it clearly appears that the deed, though absolute in its form, was taken as security for the payment of money, it will in equity be held a mortgage."

These pronouncements are repeated in Schwartzentruber v. Stephens, 8 Ill2d 222, 228, 133 NE2d 33 (1956), and we believe they apply here.

It is obvious from the terms of the instant collateral note that, at the time of delivery of the 99-year lease, a chattel real with an unexpired term exceeding five years, it was intended to be security "in the nature of a mortgage" for an existing debt, payable in the future and "free from any rights of redemption." However, the true character of the transaction became fixed as of that time with statutory redemption rights. This is so, "whatever language the parties may have used and whatever stipulations they may have inserted in the instrument." (Warner v. Gosnell, 8 Ill2d 24, 31, 132 NE2d 526.) Therefore, we hold that the 99-year leasehold comes within the provisions of section 3 of Chapter 77, and here must be considered to be "real estate." This determination makes the transaction subject to the provisions of: (1) section 1 of the Illinois Mortgage and Foreclosure Act (c 95, § 23), and the leasehold should not have been sold to satisfy the unpaid collateral note, "except in pursuance of a judgment or decree of a court of competent jurisdiction"; and (2) section 18 of Chapter 77, which provides for the mortgagor's statutory right of redemption from mortgage sales of real estate.

Defendants, not conceding that the 99-year leasehold comes within the foregoing statutory provisions, argue (1) that the plaintiff was not the real party in interest in the disputed two items of collateral, and (2) that "plaintiff has sought the aid of a court of equity with unclean hands, and that the trial court did and this

court should decline and refuse to extend such aid to him, regardless of all other circumstances in the case."

These contentions are made because plaintiff did not make any reference to the Levatino agreement in his complaint nor in the presentation of his case in chief. It was only after plaintiff was served with a subpoena duces tecum during defendants' case that he disclosed to the court that under date of February 28, 1962, he had entered into an agreement with Jerome J. Levatino, an attorney, concerning the certificates of membership and the 99-year lease. The agreement, in evidence, shows that in consideration of the sum of $175,000, plaintiff agreed "to execute proper assignments" of the certificates of membership "for the purpose of transferring ownership of said memberships to the nominee of Jerome J. Levatino," and "to execute proper assignment of Lessee's interest in the heretofore mentioned ninety-nine (99) year lease." The agreement covered other items which had to do with the "Brookwood Country Club" and reorganization proceedings then pending in the U. S. District Court. Of the $175,000, $60,000 was acknowledged "in hand paid" and the balance of payments was to be made in subsequent installments. Also in evidence, on the stationery of Levatino, dated March 6, 1962, is a 90-day extension of the agreement in order to permit plaintiff "to take such action as you deem necessary to force the return of 28 equity memberships of Brookwood Country Club, and your interest in a certain 99 year leasehold described more completely in the contract between us, which you have previously posted as collateral for a loan to Joseph Friedman."

These contentions of defendants were considered at length by the chancellor in his oral opinion, in which he stated: "The Court does feel that McGuire did come into this court in bad faith. He filed his lawsuit charging that he was the owner, claiming that he had the

385

right thereto, and seeking equitable relief, from what he contended was an unconscionable sale or arrangement, or unconscionable dealing with his property. At no time was he able by loan or in his own right to raise the money to satisfy this note. The true party interested in this action developed through adverse proceedings, through Section 60, when the defendants brought out the fact that there was the Levatino Contract as of February 28, 1962, why he didn't divulge to the court prior thereto and why the defendants had to bring it out by adverse proceedings, I can only conjecture and guess. . . . By this contract [Levatino contract], he immediately divests himself of any property . . . that he asked the Court to give him; because the contract he considers, and the Court conceded can be considered as valid and binding upon the plaintiff; and, therefore, his interest would be about the smallest interest of that of extricating himself out of a transaction that he got himself into, which was legally and lawfully sound. . . ."

The court concluded its opinion by stating: "Now, for all of those reasons, and the other reasons that the Court has considered from the testimony and the argument of counsel, and authorities cited, the Court must hold that the plaintiff cannot prevail. . . . The Court has two choices here: the Court may either dismiss the suit for want of equity or all the rights of the party before it, or it may dispose and adjudicate those rights. The Court finds that it is proper for the best interest to adjudicate and conclude all rights between the parties; . . . ."

We believe these opinion excerpts indicate that the chancellor did not find the unclean hands of the plaintiff as the determinative issue in the case, because he did proceed to "adjudicate and conclude all rights between the parties."

We concur with the conclusion of the court to adjudicate the rights of the parties. It is in accordance with pronouncements made in this state. The origin of the claim was equitable. Plaintiff's alleged misconduct did not in any measure affect the equitable relationship between the parties and did not arise out of the transaction. (7 ILP Chancery §§ 95 and 96.) Defendants had some knowledge of the real interest question early in the litigation. In their answer they allege, on information, "that Plaintiff is without funds, and that the check, if any, which was allegedly tendered at the hearing in the United States District Court was advanced by one John Doe, as a down payment toward the purchase of the properties of the Plaintiff, . . . which Contract is a breach of the verbal option to purchase heretofore granted to the Defendants herein."

We agree, as stated by the chancellor, that "it was not fair play with the Court for the plaintiff to come in on one theory and then it develops that he was not the true party in interest desiring the return of this property." But we are not persuaded that the alleged lack of substantial interest in plaintiff or his "bad faith" with the court warrant a denial of his substantial right to contend for "the true character of the transaction," and the correct legal status of the leasehold at the time it was delivered as collateral. This status determination had to be made sometime, even if the chancellor had decided to deny plaintiff equitable relief because either he was not the "real party in interest," or did not come into equity in "good faith" or with clean hands.

We conclude that the private sale of the collateral was void as to both properties, because the "true character" of one of the items of the unit sale, the instant leasehold, is real estate, which requires that it be sold "in pursuance of a judgment or decree of a

court of competent jurisdiction," as provided in section 1 of the Illinois Mortgage and Foreclosure Act, and with right of redemption as provided in section 18, Chapter 77. This holding as to both items is necessary, because they were sold as a unit and not as separate items for separate sums of money.

For the reasons stated, the judgment order appealed from is hereby reversed and the matter is remanded to the trial court for further proceedings in accordance with the views expressed herein.

Reversed and remanded.

ENGLISH, P. J. and BURMAN, J., concur.