THE COUNTY OF CHAMPAIGN, Plaintiff-Appellee, *v.* GARY P. HANKS, Defendant-Appellant.

Fourth District   No. 13122

Opinion filed August 26, 1976.

Francis J. Davis, of Auler Law Offices, of Urbana, for appellant.

James R. Burgess, Jr., State's Attorney, of Urbana (Robert James Steigmann, Assistant State's Attorney, Michael H. Polley and Gerald S. Rakes, Law Students, of counsel), for appellee.

Mr. JUSTICE STENGEL delivered the opinion of the court:

Defendant, Gary Hanks, appeals from a summary judgment entered in favor of plaintiff and, after a hearing, an award of damages for plaintiff of $2000 plus costs. The issues are whether the trial court erred in entering summary judgment for plaintiff on the theory of quasi-contract, whether defendant's motion to dismiss the complaint was improperly denied and whether the correct measure of damages was applied.

Defendant's first contention regarding the propriety of the summary

judgment requires a review of the various pleadings, documents, and admissions which were before the trial court.

The complaint, filed on October 6, 1972, by the State's Attorney of Champaign County on behalf of the county, alleged that in March 1972 defendant had been charged with burglary and had executed an affidavit of assets and liabilities which showed that defendant was indigent and had no assets. The public defender was appointed to represent defendant and did so throughout the criminal proceedings. The complaint sets out in some detail the nature of the legal services afforded to defendant, which shows that defendant was represented by three different public defender attorneys and provided with thorough and extensive pretrial, trial and post-trial representation, including numerous motions and court appearances.

The complaint further alleged that at the time defendant executed the affidavit and the public defender was appointed, defendant had legal interests in three parcels of real property within the county of Champaign, with the estimated value of defendant's interests in two parcels being in excess of $50,000. One week after executing the affidavit of assets and liabilities defendant conveyed his interest in one parcel to Chet Hanks and Mabel Hanks for their lifetimes, with the remainder to defendant. The complaint alleged that defendant knew the representations made in the affidavit regarding his financial status were false, that the public defender was appointed in reliance upon these representations, and that defendant made the fraudulent representations in order to obtain the services of the public defender's office.

Defendant's answer to the complaint admitted certain allegations not relevant here and either denied or disclaimed sufficient information as to the other allegations. Defendant also answered plaintiff's interrogatories, in which he admitted that as of the date the public defender was appointed, defendant had a legal interest in a certain parcel of real property with an estimated value of $28,000.

On January 25, 1974, plaintiff filed a request to admit facts and genuineness of documents and notice of intent to use public records, pursuant to Supreme Court Rule 216 (Ill. Rev. Stat. 1975, ch. 110A, par. 216). The request for admissions called for, *inter alia*, an admission that defendant executed an affidavit of assets and liabilities which showed no assets and no ownership of real property, an admission that the representations in the affidavit were false and an admission that defendant owned interests in three parcels of real property. In addition, plaintiff furnished a copy of defendant's affidavit and copies of instruments showing defendant's interests in the parcels of property and defendant's conveyance of one parcel to Chet and Mabel Hanks for their lifetimes.

Defendant did not respond to the request for admissions until March 19, 1974, the date scheduled for a hearing on plaintiff's motion for summary judgment. Defendant admitted that he filed a statement of assets and liabilities showing no assets but denied this was an "affidavit," admitted that he had legal interests in the three parcels of real property at the time the public defender was appointed and admitted that he made the conveyance to Chet and Mabel Hanks.

We note first that defendant failed to respond to plaintiff's request for admissions until 53 days had elapsed. Under Supreme Court Rule 216(c) (Ill. Rev. Stat. 1975, ch. 110A, par. 216(c)), a failure to respond within 28 days is deemed an admission. All we have before us and all the trial court had before it was whether or not on this record there is a genuine issue of material fact to be tried. The trial court thought not and we agree. Even considering defendant's answers to the requests, along with other documents, pleadings and admissions before the trial court, the undisputed facts show that at the time defendant executed an affidavit showing no assets and the public defender was appointed, defendant had legal interests in real property with a value which, if revealed to the trial court at the indigency hearing, clearly would have disqualified defendant from free representation.

■■ A quasi-contract, or contract implied in law, is one which reason and justice dictate and is founded on the equitable doctrine of unjust enrichment. (*Board of Highway Commissioners v. City of Bloomington* (1911), 253 Ill. 164, 97 N.E. 280.) A contract implied in law does not depend on the intention of the parties, but exists where there is a plain duty and a consideration. The essential element is the receipt of a benefit by one party under circumstances where it would be inequitable to retain that benefit without compensation. *Comm v. Goodman* (1st Dist. 1972), 6 Ill. App. 3d 847, 286 N.E.2d 758; *First National Bank v. Glenn* (1st Dist. 1971), 132 Ill. App. 2d 322, 270 N.E.2d 493.

■■ The county does not officiously confer the benefits of free legal representation, but furnishes legal services to those criminal defendants who qualify by virtue of their indigency. The undisputed facts reveal that defendant received free legal representation when he clearly was not entitled to such representation and that defendant failed to disclose his assets. Under these circumstances the law will imply a promise by defendant to compensate the county and, accordingly, we find that summary judgment was properly granted.

Defendant next contends that the complaint should have been dismissed on his motion before the trial court because the State's Attorney did not obtain authorization from the county board to institute this suit.

Section 5(1) of "An Act in regard to attorneys general and state's attorneys" states:

"§5. The duty of each State's attorney shall be:

(1) To commence and prosecute all actions, suits, indictments and prosecutions, civil and criminal * * * in which the people of the State or county may be concerned."

It has been held that the county board has no power to lessen the statutory duty or authority of the State's Attorney. (*Wilson v. County of Marshall* (2d Dist. 1930), 257 Ill. App. 220.) Moreover, our Supreme Court rejected this contention with regard to suits by the State's Attorney for the collection of delinquent taxes in *People v. Kimmel* (1926), 323 Ill. 261, 154 N.E. 97. Consequently, we do not find that the lack of prior authorization from the county board is fatal to this action.

■■ Defendant also contends that this action is merely a relitigation of his indigency at the time the public defender was appointed and, as such, should be barred by principles of res judicata because defendant was judicially determined to be indigent during the criminal proceedings.

The related doctrines of estoppel by verdict and estoppel by judgment are discussed in *Smith v. Bishop* (1962), 26 Ill. 2d 434, 187 N.E.2d 217. (See also *In re Estate of Garrett* (2d Dist. 1969), 109 Ill. App. 2d 243, 248 N.E.2d 539.) We find that neither doctrine is applicable here. The prior determination consisted merely of a finding of indigency based on the sufficiency of defendant's affidavit of assets and liabilities to establish indigency. Such a proceeding is by necessity of a summary nature and is designed to insure that a criminal defendant is afforded his sixth amendment right to legal representation before the critical stages of the criminal prosecution commence. By contrast, the instant suit is a truly adversarial civil proceeding involving a different cause of action and based on facts and issues not actually raised or contested previously.

During the pendency of this appeal, defendant has cited as additional authority *County of Champaign v. Anthony* (4th Dist. 1975), 33 Ill. App. 3d 466, 337 N.E.2d 87. There, the court held that no cause of action existed for the recovery of funds expended by a county in protecting a witness from a criminal defendant.

The court in *Anthony* concluded that a county could not recover funds legitimately expended for a public purpose. Here, however, the county's legitimate expenditure of funds is for the legal representation of indigent criminal defendants. The county has no public duty to furnish legal services to nonindigents and, where such services are rendered under the circumstances present in the instant case, the county has a cause of action for restitution. Therefore, *Anthony* is distinguishable on its facts.

Defendant's final contention concerns the correct measure of damages. The trial court, having heard testimony from private attorneys that the reasonable value in Champaign County for the type of services furnished to defendant was $3000, awarded damages of $2000 after considering the

experience of the particular attorneys involved and other factors. Defendant has maintained that the correct measure of damages is the cost to plaintiff, which defendant asserts as being that portion of the defender's salary attributable to his defense, or $181.

The measure of damages for an implied in law contract is the amount by which defendant has been unjustly enriched or the value of the actual benefit received by defendant, and recovery is usually measured by the reasonable value of the services performed by plaintiff. (*Comm v. Gordon.*) In implied in law contracts, involving principles of restitution and the avoidance of unjust enrichment, the proper determination of damages may be difficult and often depends on the peculiar facts of the individual case. (See 66 Am. Jur. 2d *Restitution and Implied Contracts* §166 (1973).) The Restatement of Restitution (1937), section 152, provides:

> "Where a person is entitled to restitution from another because the other has obtained his services, or services to which he is entitled, by fraud, duress or undue influence, the measure of recovery for the benefit received by the other is the market value of such services irrespective of their benefit to the recipient."

In the instant case, defendant's assertion regarding the proper amount of damages is patently erroneous. Even if plaintiff's recovery were limited to its costs, as opposed to the benefit received by defendant, computation of such an amount would include many factors other than the applicable portion of the attorneys' salaries. Moreover, such an award would not effect substantial justice between the parties, as it ignores defendant's unjust enrichment.

Defendant, by his misrepresentations, received legal services which were found by the trial court to have a reasonable value of $2000. The services rendered by three different attorneys from the public defender's office were not only competent but lengthy and most thorough. The record reveals that between March 28, 1972, and July 17, 1972, they appeared in court at least nine days on various matters from preliminary hearing and arraignment to motions to suppress the in-court identification. The jury trial consumed four days from July 17 to July 20, 1972. Motions for mistrial, post-trial motions, probation hearing and finally sentencing hearing were not completed until October 6, 1972. Thus the damage award does not exceed the extent of defendant's unjust enrichment as it is no more than defendant would have paid for such services had he not misrepresented his assets. This damage award more nearly reflects the value of the benefit received by defendant, and a lesser measure of damages would be tantamount to allowing defendant to profit from his wrongful conduct.

■■ ■ We also agree with the trial court's observation that such an award is the only effective measure of damages, not only in terms of the benefit received by defendant, but also in terms of deterrence. Although liability was found on the theory of quasi contract, the facts giving rise to this cause of action are suggestive of tortious conduct on defendant's part in the nature of fraud. Exemplary damages, which are allowed for an action based on fraud, have as their primary purpose the deterrence of others from committing a similar act and are allowed in the interest of society. (*McEwen v. Walsh* (2d Dist. 1968), 96 Ill. App. 2d 326, 238 N.E.2d 616.) Although the damages here do not exceed the reasonable value of plaintiff's services, even if the damage award were regarded as exemplary in nature to the extent it exceeds plaintiff's costs, we believe that such an award would be proper as a means of deterring similar conduct in the future. In *Fuller v. Oregon*, 417 U.S. 40, 40 L. Ed. 2d 642, 94 S. Ct. 2116, we find that where the rights as a civil debtor are preserved, there is no necessary constitutional barrier to a State requiring reimbursement for the costs of providing legal counsel to a criminal defendant. In addition, the Approved Draft, 1968, of the American Bar Association Standards Relative to Providing Defense Services, Appendix E, section 8, provides for civil recovery by a county of the costs of legal assistance, as to those persons who were not legally entitled to receive such assistance. We note that the State Appellate Defender Act (Ill. Rev. Stat. 1975, ch. 38, par. 208—11) created in 1972, provided for the recovery of funds "* * * from each person who has received legal assistance under this Act, to which he was not entitled and for which he refuses to pay or reimburse. * * *" Since this provision would not be applicable to persons receiving legal assistance in the trial court, the next General Assembly may wish to consider this apparent inconsistency.

Accordingly, the judgment of the Circuit Court of Champaign County is affirmed.

Affirmed.

ALLOY, P. J., and BARRY, J., concur.