First Division
July 19, 2010

1-09-1797

| | | |
|---|---|---|
| YPI 180 N. LaSALLE OWNER, LLC, a | ) | Appeal from the |
| Delaware Limited Liability | ) | Circuit Court |
| Company, | ) | of Cook County. |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 09 CH 6451 |
| | ) | |
| 180 N. LaSALLE II, LLC, a | ) | |
| Delaware Limited Liability | ) | |
| Company, | ) | Honorable |
| | ) | William O. Maki, |
| Defendant-Appellee. | ) | Judge Presiding. |

PRESIDING JUSTICE HALL delivered the opinion of the court:

This appeal arises from the grant of a motion to dismiss brought under section 2-615 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2006)).  The overarching issue before the court concerns the right of an assignee of a contract to rescind the contract on the ground of impossibility of performance.  For the reasons that follow, we affirm.

The appeal focuses on two common-law doctrines of contract law: impossibility of performance, which is an affirmative defense to a breach of contract claim (Radkiewicz v. Radkiewicz, 353 Ill. App. 3d 251, 260, 818 N.E.2d 411 (2004)); and equitable rescission, which allows a party to rescind or abandon a contract based on, among other things, the impossibility of performance. See (30 R. Lord, Williston on Contracts §77:95, at 593 (4th ed. 2007) ("Impossibility of performance, as a ground for rescission of a contract, refers to those factual situations where one party

to a contract finds that the purposes for which a contract was made have become impossible to perform on one side")).

BACKGROUND

On August 12, 2008, defendant-appellee, 180 N. LaSalle II, LLC (LaSalle), as seller, and Younan Properties, Inc. (Younan), as purchaser, entered into a purchase agreement (contract), for the sale and purchase of commercial property located at 180 North LaSalle Street, Chicago, Illinois. The purchase price was $124 million. The purchase price (less earnest money) was to be deposited with an escrow agent two business days prior to closing. Pursuant to the contract, Younan deposited initial earnest money of $2.5 million into an escrow account.

Between August 29, 2008, and September 30, 2008, LaSalle and Younan executed three amendments to the contract. The first amendment extended the time in which Younan could evaluate and then terminate the contract if it decided to do so. In the second amendment, LaSalle and Younan acknowledged that the time to terminate the contract had expired, and as a result, Younan deposited an additional $2.5 million in earnest money with the escrow agent.

In the third amendment, LaSalle provided Younan with a $500,000 credit against the purchase price, and Younan deposited an additional $1 million in earnest money with the escrow agent. LaSalle and Younan also directed the escrow agent to release $1 million of the earnest money to LaSalle and agreed that the

released earnest money would be credited against the purchase price at closing but was "hereby deemed earned by Seller and shall be non-refundable to Purchaser for any reason whatsoever except in the event of a default by Seller of Seller's obligations to close the sale or a failure of a condition to Purchaser's obligation to close the sale."

On October 9, 2008, Younan assigned all of its rights, title, and interest in the contract to plaintiff-appellant, YPI 180 N. LaSalle Owner, LLC (YPI). The assignment provided that Younan remained liable under the contract.

In early October 2008, Younan received notice that one of its lenders, Allied Irish Bank, had pulled out of the financing arrangement on the ground that economic conditions in Ireland beyond the bank's control or anticipation had forced it to withdraw from the credit markets.

Between October 15, 2008, and December 9, 2008, LaSalle, and this time YPI, executed additional amendments to the contract. On October 15, 2008, pursuant to the fourth amendment to the contract, LaSalle and YPI directed the escrow agent to release the remaining earnest money to LaSalle and also agreed that the earnest money would be credited at closing and was deemed earned by seller and non-refundable, except in the event of default by seller of seller's obligations to close the sale. In return, the parties extended the closing date to December 17, 2008.

Also in the fourth amendment, LaSalle and YPI acknowledged

No. 1-09-1797

the assignment and agreed that Younan would be jointly and severally liable with YPI for buyer's obligations under the contract. Younan joined in execution of the fourth amendment.

On November 20, 2008, LaSalle and YPI executed a fifth amendment to the contract. Under this amendment, LaSalle agreed to reduce the purchase price by $4 million, and YPI waived the option to extend the closing date beyond December 17, 2008. Younan joined in execution of the fifth amendment.

On December 9, 2008, LaSalle and YPI executed a sixth and final amendment to the contract. Under this amendment, the parties agreed to extend the closing date to no later than February 18, 2009. Younan also joined in execution of this sixth amendment.

When Younan failed to close on purchase of the commercial property, LaSalle terminated the contract and retained the deposited earnest money as its sole remedy for breach of the contract.[1] Shortly thereafter, YPI filed the underlying complaint against LaSalle seeking to rescind the contract and recover $6 million in earnest money retained by LaSalle.

YPI argued that pursuant to the contract-law doctrine of impossibility of performance, it was excused from performing

_____

[1] Pursuant to section 13.3 of the contract, LaSalle waived its rights to seek any additional damages from Younan or YPI for their failure to close the sale.

-4-

No. 1-09-1797

under the contract due to the 2008 global credit crisis which it claimed prevented it and Younan from obtaining the commercially-practical financing contemplated when the contract was originally formed.

Following a hearing, the trial court granted LaSalle's section 2-615 motion to dismiss, striking YPI's complaint with prejudice and without leave to amend. This timely appeal followed.

ANALYSIS

The threshold question before the court is whether YPI, as an assignee of the contract, has the right to rescind the contract. We answer in the affirmative.

Rescission is an equitable remedy that seeks to restore the contracting parties to their precontract positions. See Horan v. Blowitz, 13 Ill. 2d 126, 132, 148 N.E.2d 445 (1958) ("'[R]escission' is the cancelling of a contract so as to restore the parties to their initial status ***"). When a contract is rescinded, it is as if the contract never existed in the first place. See Puskar v. Hughes, 179 Ill. App. 3d 522, 528, 533 N.E.2d 962 (1989) ("[w]here a contract is rescinded, the rights of the parties under that contract are vitiated or invalidated"). A trial court's decision granting or denying a request to rescind a contract is within the sound discretion of the court, whose ruling will not be disturbed absent an abuse of that discretion. Farmer v. Koen, 187 Ill. App. 3d 47, 50, 542 N.E.2d 1326 (1989).

-5-

No. 1-09-1797

An assignment is the transfer of some identifiable property, claim, or right from the assignor to the assignee. Buck v. Illinois National Bank & Trust Co., 79 Ill. App. 2d 101, 106, 223 N.E.2d 167 (1967); Bishop v. Village of Brookfield, 99 Ill. App. 3d 483, 490, 425 N.E.2d 1113 (1981). The assignment operates to transfer to the assignee all of the assignor's right, title or interest in the thing assigned, such that the assignee stands in the shoes of the assignor. Community Bank of Greater Peoria v. Carter, 283 Ill. App. 3d 505, 508, 669 N.E.2d 1317 (1996).

Because of the equitable and personal character of the right to sue for rescission, mere naked claims for rescission are generally not assignable. Banque Arabe Et Internationale D'Investissement v. Maryland National Bank, 850 F. Supp. 1199, 1214 n.7 (S.D.N.Y. 1994), citing Soderberg v. Gens, 652 F. Supp. 560, 565 (N.D. Ill. 1987). However, ordinary business contracts, other than those requiring purely personal services, are generally assignable. In re Estate of Frayser, 401 Ill. 364, 372, 82 N.E.2d 633 (1948). Moreover, executory contracts for the purchase of real estate, such as the one at issue in this case, may be assigned. See In re Estate of Martinek, 140 Ill. App. 3d 621, 630, 488 N.E.2d 1332 (1986).

In the instant case, LaSalle contends that Younan, the assignor of the contract, waived its right to seek rescission of the contract and that therefore, YPI, as assignee of the contract, lacks standing to seek rescission of the contract.

-6-

No. 1-09-1797

LaSalle contends that after Younan entered into the contract and learned of the 2008 global credit crisis, it nevertheless reaffirmed the contract by assigning the contract to YPI and then executing amendments to the contract. LaSalle maintains that Younan consequently waived its right to seek rescission of the contract, and that YPI, as an assignee of the contract, lacks standing to rescind the contract. We disagree.

The right to rescind a contract must be exercised promptly on discovery of facts that confer the right to rescind, otherwise the right is waived. See Gibson Electric Co., Inc. v. State of Illinois, 27 Ill. Ct. Cl. 60 (1970); Mound City Distilling Co. v. Consolidated Adjustment Co., 152 Ill. App. 155, 159 (1909); see also Vincent v. Vits, 208 Ill. App. 3d 1, 7, 566 N.E.2d 818 (1991) ("A right to rescission must be exercised promptly"). In this case, there is nothing in the record to suggest that at the time Younan or YPI executed the amendments to the contract, that they possessed knowledge of the 2008 global credit crisis sufficient to justify rescission of the contract. As a result, we find that YPI, as an assignee of the contract, has standing and the right to rescind the contract.

The next question is, if YPI does in fact have standing and the right to rescind the contract, is the contract rescindable on the ground of impossibility of performance under the facts and circumstances of this case? We must answer in the negative.

Impossibility of performance as a ground for rescission of a

-7-

contract refers to those factual situations where the purposes for which the contract was made have, on one side, become impossible to perform. See 30 R. Lord, Williston on Contracts §77:95 (4th ed. 2004). The doctrine of impossibility of performance in contract was recognized by our supreme court in Leonard v. Autocar Sales & Services Co., 392 Ill. 182, 187, 64 N.E.2d 477 (1945). See Mouhelis v. Thomas, 95 Ill. App. 3d 181, 183, 419 N.E.2d 956 (1981); Joseph W. O'Brien Co. v. Highland Lake Construction Co., 17 Ill. App. 3d 237, 241, 307 N.E.2d 761 (1974).

The doctrine excuses performance where performance is rendered objectively impossible due to destruction of the subject matter of the contract or by operation of law. Leonard, 392 Ill. at 187; see also 407 East 61st Garage, Inc. v. Savoy Fifth Avenue Corp., 23 N.Y.2d 275, 281, 296, 244 N.E.2d 37, 41, 296 N.Y.S.2d 338, 343-44 (1968) ("impossibility of performance is limited to the destruction of the means of performance by an act of God, Vis major, or by law"); Seaboard Lumber Co. v. United States, 308 F.3d 1283, 1294 (Fed. Cir. 2002) (performance of contract only excused under doctrine of impossibility when it is objectively impossible). This doctrine has been narrowly applied "due in part to judicial recognition that the purpose of contract law is to allocate the risks that might affect performance and that performance should be excused only in extreme circumstances." Kel Kim Corp. v. Central Markets, Inc., 70 N.Y.2d 900, 902, 519

N.E.2d 295, 296, 524 N.Y.2d 384, 386 (1987).

The party advancing the doctrine must show that the events or circumstances which he claims rendered his performance impossible were not reasonably foreseeable at the time of contracting. Illinois-American Water Co. v. City of Peoria, 332 Ill. App. 3d 1098, 1106, 774 N.E.2d 383 (2002). Where a contingency that causes the impossibility might have been anticipated or guarded against in the contract, it must be provided for by the terms of the contract or else impossibility does not excuse performance. See Leonard, 392 Ill. at 187 ("subsequent contingencies, not provided against in the contract, which render performance impossible, do not bring the contract to an end"); see also United States v. Winstar Corp., 518 U.S. 839, 905, 116 S. Ct. 2432, 2469-70, 135 L. Ed. 2d 964, 1010 (1996) ("'[i]f [the risk] was foreseeable there should have been provision for it in the contract, and the absence of such a provision gives rise to the inference that the risk was assumed'"), quoting Lloyd v. Murphy, 25 Cal. 2d 48, 54, 153 P.2d 47, 50 (1944).

In this case, YPI argues that its performance under the contract was made impossible due to the 2008 global credit crisis, which it claimed prevented it and Younan from obtaining the commercially-practical financing contemplated when the contract was originally made. YPI's argument is misplaced.

Even if the global credit crisis made it difficult, to

nearly impossible, to procure the sought-after commercial financing, this is not the relevant issue. The primary issue is whether it was foreseeable that a commercial lender might not provide Younan and YPI with the financing they sought. See Ner Tamid Congregation of North Town v. Krivoruchko, 638 F. Supp. 2d 913, 928 (N.D. Ill. 2009). Even without the global credit crisis of 2008, it was foreseeable that a commercial lender might not provide Younan and YPI with the financing they sought. See Ner Tamid Congregation of North Town, 638 F. Supp. 2d at 928 (contracting party's failure to obtain commercial financing in connection with purchase of property was not a ground to rescind contract under doctrine of impossibility of performance since it was foreseeable, for any number of reasons, that a lender might not provide the sought after financing).

The potential inability to obtain commercial financing is generally considered a foreseeable risk that can be readily guarded against by inclusion in the contract of financing contingency provisions. Ner Tamid Congregation of North Town, 638 F. Supp. 2d at 928. If the inability to obtain commercial financing, standing alone, were sufficient to excuse performance under the doctrine of impossibility of performance, then the law binding contractual parties to their agreements would be of no consequence. See, e.g., Northern Illinois Gas Co. v. Energy Cooperative, Inc., 122 Ill. App. 3d 940, 952, 461 N.E.2d 1049 (1984) ("If changed prices, standing alone, constitute a

frustrating event sufficient to excuse performance of a contract, then the law binding contractual parties to their agreements is no more").

In addition, the doctrine of impossibility of performance does not apply to excuse performance "as long as it lies within the power of the promisor to remove the obstacle to performance." Felbinger & Co. v. Traiforos, 76 Ill. App. 3d 725, 733, 394 N.E.2d 1283 (1979). The underlying complaint alleged that Younan's current assets exceeded $1.6 billion. Nothing in the record indicates that Younan lacked sufficient assets or equity to pay the contract purchase price. To the extent its resources were not liquid, nothing in the record suggests it would have been impossible for Younan to convert its nonliquid assets to liquid assets in order to pay the contract purchase price.

We find that under the facts and circumstances of this case, as a matter of law, Younan's and YPI's failure to obtain the commercially-practical financing they sought was not an adequate ground to rescind the contract under the doctrine of impossibility of performance.

A section 2-615 motion to dismiss attacks the legal sufficiency of the complaint and should be granted if, after viewing the allegations in the light most favorable to the plaintiff, the complaint fails to state a cause of action on which relief can be granted. McCready v. Secretary of State, 382 Ill. App. 3d 789, 794, 888 N.E.2d 702 (2008); McHenry County

No. 1-09-1797

Defenders, Inc. v. City of Harvard, 384 Ill. App. 3d 265, 280, 891 N.E.2d 1017 (2008). The grant of a section 2-615 motion to dismiss presents a question of law, which is reviewed de novo. McHenry County Defenders, Inc., 384 Ill. App. 3d at 280.

In the instant case, we find that the trial court properly struck YPI's complaint with prejudice and without leave to amend pursuant to section 2-615 of the Code, on the ground that the complaint failed to allege sufficient facts warranting rescission of the contract under the doctrine of impossibility of performance.

Accordingly, for the reasons set forth above, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

PATTI and LAMPKIN, JJ., concur.